UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS NAZAROVECH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-250 |
| | ) |
| AMERICAN ELITE RECOVERY, LLC, | ) |
| MARK M. MILLER, SCOTT SANTORIO, | ) |
| KAYLA D'ANGELO, AMERICAN | ) |
| RECOVERY SYSTEMS, LLC, and | ) |
| CRAIG MARTYNKIEWICZ, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO LIABILITY**
(Doc. 51, 53)

In 2018, Plaintiff Nicholas Nazarovech sued American Elite Recovery, LLC, Mark M. Miller, Scott Santorio, Kayla D'Angelo, American Recovery System, LLC (collectively, "Answering Defendants"), and Craig Martynkiewicz, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692 et seq., the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev. Code Ann. § 1345 et seq., and Ohio common law.[1] (Doc. 12.) Answering Defendants[2] filed an Answer to the Amended Complaint (Doc. 29) but otherwise have minimally participated

---

[1] Plaintiff is a resident of Ohio and originally filed this lawsuit in the Northern District of Ohio. The case was transferred to this district on Plaintiff's motion under 28 U.S.C. § 1404(a). (Doc. 44.) As the transferee court, this court applies Ohio law to the state-law claims over which it exercises supplemental jurisdiction. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). However, the court need not adhere to the Sixth Circuit's interpretation of federal law. *In re Pan Am. Corp.*, 950 F.2d 839, 847 (2d Cir. 1991).

[2] Defendant Martynkiewicz answered neither the original complaint nor the Amended Complaint. In October 2019, the clerk granted an entry of default as to Defendant Martynkiewicz. (Doc. 37.)

in this litigation (*see, e.g.*, Doc. 47 (Plaintiff's motion to compel discovery responses), Doc. 49 (Plaintiff's motion for sanctions for failure to respond to discovery requests)[3]). Plaintiff has filed a motion for summary judgment against Answering Defendants on the question of their liability, and also seeks a default judgment against Defendant Martynkiewicz. (Doc. 53.)

## Facts

I.  **Sources of Factual Record for Summary Judgment – Defendants' Answer and Admissions**

Although Answering Defendants filed an Answer to the Amended Complaint (Doc. 29), they have not participated in discovery. In May 2020, Plaintiff's counsel served requests for admissions on each of the Answering Defendants. (*See* Doc. 51-1 ¶ 2; Docs. 47-2 through 47-5 (requests for admissions from Answering Defendants).) To date, none of the Answering Defendants have responded (*id.* ¶ 3), despite multiple court orders compelling their response (Docs. 48, 49).

Under Fed. R. Civ. P. 36(a)(3), "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." A court may consider a party's Rule 36 admissions, including "admissions derived from a party's failure to respond," as part of the factual record on a motion for summary judgment. *Paniagua v. Walter Kidde Portable Equip., Inc.*, 183 F. Supp. 3d 473, 482 (S.D.N.Y. 2016) (citing cases); *see also S.E.C. v. Dynasty Fund, Ltd.*, 121 F. App'x 410, 411 (2d Cir. 2005) (citing *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 651–52 (2d Cir. 1983), *rejected on other grounds by McLaughlin*

---

[3] On October 14, 2020, the court granted Plaintiff's motion to compel discovery. (Doc. 48.) On February 11, 2021, the court denied Plaintiff's request to issue a bench warrant for Defendant Miller but ordered Defendant Miller to respond to Plaintiff's discovery requests by February 26, 2021. (Doc. 50.)

*v. Richland Shoe Co.*, 486 U.S. 128 (1988)). This rule is subject to Fed. R. Civ. P. 36(b), under which the court may, on motion, permit a party to withdraw an admission "if it would promote the representation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *See Paniagua*, 183 F.3d at 482; *Donovan*, 703 F.2d at 652.

As Defendants have not engaged in discovery, the factual record for purposes of Plaintiff's summary judgment motion constitutes the Answer (Doc. 29) and the requests for admissions served on Answering Defendants (Docs. 47-2 to 47-5), which the court deems admitted due to Answering Defendants' non-response.

Within this factual record, Plaintiff objects to some of Answering Defendants' answers on the basis that they are "equivocal" and thus "basically meaningless." (Doc. 53 at 5–7.) Plaintiff argues that the allegations in the Amended Complaint that correspond to these equivocal answers should be deemed admissions of fact because Fed. R. Civ. P. 8 "provides for only three possible responses to allegations contained in a civil complaint: (1) admit the allegations; (2) deny the allegations; or (3) state that there is insufficient knowledge or information to form a belief about the truth of the allegations." (Doc. 51 (quoting *United States v. Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d 816, 826 (E.D. Mich. 2010)). Specifically, Plaintiff objects to the following "equivocal" answers:

- In response to the Amended Complaint's allegation that "this alleged debt was listed in the 'bad paper' of the Heidenreich entities, which was then transferred to the Miller Conspiracy," Answering Defendants responded: "Defendants admit that Plaintiff's mother incurred the referenced debt and that Defendants attempted to lawfully collect on that debt." (Doc. 53 at 5 (quoting Doc. 12 ¶ 21 and Doc. 29 ¶ 21).)

- In response to ten different factual allegations, contained in paragraphs 22–25 and 27–32 of the Amended Complaint, Answering Defendants uniformly answered as follows: "Defendants admit that Defendants undertook lawful contact of the Plaintiff's mother in an effort to collect on the debt." (*Id.* (quoting Doc. 12 ¶¶ 22–25, 26–32 and Doc. 29 ¶¶ 22–25, 26–32).) The ten allegations were:

    22. Elite began to call Michelle repeatedly and to threaten her with criminal arrest and prosecution for supposedly "defrauding a financial institution."

    23. Around September of last year, Plaintiff began receiving repeated phone calls from employees of the Miller Conspiracy.

    24. Elite, through these employees, threatened Plaintiff with arrest, detention, and criminal prosecution if he did not reveal the whereabouts of his mother.

    25. Plaintiff asked who was calling, but Elite's employees refused to answer this question.

    . . .

    27. Nonetheless, Plaintiff refused to provide Elite with his mother's whereabouts.

    28. Elite continued to call Plaintiff, often with back-to-back phone calls so that Plaintiff's phone would continue to ring.

    29. Plaintiff demanded that Elite stop placing calls to him.

    30. Elite stated that it would ignore Plaintiff's demand and that it would continue to call him every single day until he disclosed his mother's whereabouts.

    31. Eventually, in one of these phone conversations, an Elite employee did reveal the name of the company to Plaintiff.

    32. Also, eventually, Elite did cease to call Plaintiff every single day. Elite did not follow through on its threat, nor did it ever intend to do so.

(Doc. 12.)

Plaintiff cites three cases from other circuits in support of his argument that these equivocal responses should be deemed admissions. (Doc. 53 at 7 (citing *Vehicle 2007 Mack 600 Dump Truck*, 680 F. Supp. 2d at 826; *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Rest., Inc.*,

4

180 F.R.D. 332, 333 (N.D. Ill. 1998); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1030 (C.C.P.A. 1982)).) The court considers whether it is appropriate to treat the contested answers as admissions of fact.

Fed. R. Civ. P. 8 sets forth the rules of pleading in federal court. Generally, a defendant's answer must "state in short and plain terms its defenses to each claim asserted against it" and "admit or deny the allegations asserted by an opposing party." Fed. R. Civ. P. 8(b)(1).[4] "[T]he theory of Rule 8(b) is that a defendant's pleading should apprise the opponent of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail." 5 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1261 (3d ed.). In other words, "'plain notice' of the issues being raised by the defendant is all that is required at the pleading stage." *Id.* An answer that "is not sufficiently definite in nature to give reasonable notice of the allegations in the complaint sought to be placed in issue . . . may be treated as admitted." *Id.*

Each of the eleven "equivocal" answers to which Plaintiff objects purports to admit something: in one case, that "Plaintiff's mother incurred the referenced debt," and, in all eleven answers, that Answering Defendants "*lawfully*" contacted Plaintiff in an attempt to collect the debt. (*See* Doc. 29 ¶¶ 21–25, 26–32).) Under Rule 8(b)'s "notice" pleading standard, the "admission" that Defendants acted lawfully may give Plaintiff sufficiently definite notice that Answering Defendants intend to contest the *legality* of their alleged behavior. But such an "admission" does not give Plaintiff notice of Answering Defendants' intent to admit or deny the truth of the alleged fact, as required under Rule 8. Because the eleven contested answers fail to

---

[4] Fed. R. Civ. P. 8(b)(5) further provides that "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."

5

provide reasonable notice regarding which of the Amended Complaint's *factual* allegations Answering Defendants seek to place in issue, the court deems these allegations (Doc. 12 ¶¶ 21–25, 26–32) admitted.

## II.   Factual Record

The following factual record reflects admissions from Answering Defendants' answer (Doc. 29) and admissions derived from Answering Defendants' non-response to Plaintiff's requests for admissions (*see* Doc. 47-2).

American Elite Recovery, LLC ("Elite") is a debt collection business owned by Defendant Miller located at 1561 Kenmore Avenue in Buffalo, NY. (Doc. 29 ¶¶ 4, 12; Doc. 47-2 ¶¶ 1, 4.) Elite employs the individual defendants. (*Id.* ¶¶ 4, 14–15.) Defendants are "debt collectors" within the meaning of the FDCPA. (Doc. 29 ¶ 38.)

Plaintiff's mother allegedly incurred an overdraft fee on a personal checking account held at Huntington National Bank. (Doc. 12 ¶ 20.) Elite never possessed good title to this debt. (Doc. 47-2 ¶ 7.) Employees of Elite called Plaintiff repeatedly and "threatened Plaintiff with arrest, detention, and criminal prosecution if he did not reveal the whereabouts of his mother." (Doc. 29 ¶¶ 23–24, 27–28; Doc. 47-2 ¶¶ 9–10.) The Elite employees who called Plaintiff did not identify themselves. (Doc. 29 ¶ 25; Doc 47-2 ¶¶ 11.) Elite ignored Plaintiff's requests that it stop calling. (Doc. 29 ¶¶ 29–30; Doc. 47-2 ¶¶ 14–15.) At some point, an Elite employee revealed the company's name to Plaintiff. (*Id.* ¶ 31.) Elite eventually stopped calling. (Doc. 29 ¶ 32; Doc. 47-2 ¶ 17.) Defendants' conduct injured Plaintiff by impairing his relationship with his mother. (Doc. 47-2 ¶ 20.)

## Analysis

**I.     Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court does not weigh evidence but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making this determination, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A party's failure to oppose summary judgment does not automatically result in a judgment in favor of the moving party. The court still must satisfy itself that evidence in the record supports the motion for summary judgment. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Id.* (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). The court must also determine that "the legal theory of the motion is sound." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014).

Where a pro se litigant is on the opposing side of a motion for summary judgment, the Second Circuit has urged caution. *Vt. Teddy Bear*, 373 F.3d at 246. In such situations, Local Civil Rule 56(b) requires the moving party to serve the pro se litigant with a form notice advising of the potential consequences of the motion and of the litigant's failure to respond. Plaintiff

provided this notice to Defendants on May 21, 2021. (Doc. 53 at 1.[5]) To date, Defendants have not responded to the motion for summary judgment.

## II. FDCPA Claims

The Complaint alleges that Defendants violated three separate provisions of the FDCPA. As a preliminary matter, Defendant Elite has admitted to being a debt collector under the FDCPA. (Doc. 29 ¶ 5.) The court considers, in turn, whether the record before the court entitles Plaintiff to summary judgment on the question of Answering Defendants' liability for violations of any of the FDCPA sections.

### A.   15 U.S.C. § 1692b

Section 1692b requires a "debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer" to:

> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information . . .

15 U.S.C. § 1692b.

The record before the court supports a finding of liability for violating § 1692b. Despite Plaintiff's requests, Defendants at first refused to identify themselves when they contacted Plaintiff by phone. Defendants also called Plaintiff repeatedly even though Plaintiff expressly objected to receiving additional communications. A reasonable person could not conclude that

---

[5] Plaintiff previously filed a motion for summary judgment without including the required notice to pro se litigants. (Doc. 51.) The motions are otherwise identical.

these additional communications were justified under § 1693b(3) when little, if any, time elapsed between Defendants' successive attempts to contact Plaintiff. Plaintiff could not have acquired correct or complete information in that time.

### B. 15 U.S.C. § 1692e

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute specifically identifies "[t]he threat to take any action that cannot legally be taken or is not intended to be taken" as an example of conduct prohibited under this section. 15 U.S.C. § 1692e(5).

The factual record likewise supports a finding of liability under § 1692e. Defendants threatened Plaintiff with "arrest, detention, and criminal prosecution" despite lacking the legal authority to arrest, detain, or criminally prosecute Plaintiff. Consequently, Plaintiff is entitled to summary judgment on Answering Defendants' liability for violating § 1692e.

### C. 15 U.S.C. § 1692d

Section 1692d prohibits debt collectors from engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Examples of such conduct include threatening violence, using obscene or profane language, publishing "a list of consumers who allegedly refuse to pay debts," advertising a debt for sale as means of coercing payment of the debt, and "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d.

An average person would feel harassed or abused by Defendants' threat of arrest, detention, or criminal prosecution. Similarly, Defendants repeatedly telephoned Plaintiff against his wishes, at times causing Plaintiff's phone to ring continuously. Feeling harassed would be the

natural consequence of most of Defendants' actions towards Plaintiff. Consequently, Plaintiff is entitled to summary judgment on Answering Defendants' liability for violating § 1692d.

### III. Ohio CSPA Claim

Plaintiff's second cause of action arises under the Ohio CSPA. The CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Rev. Code § 1345.02(A). The Supreme Court of Ohio has held that a debt collector is a "supplier" within the meaning of the CSPA. *Taylor v. First Resol. Inv. Corp.*, 72 N.E.3d 573, 599 (Ohio 2016). Defendants have admitted that they are debt collectors (Doc. 29 ¶ 38), and thus Defendants qualify as suppliers under the CSPA. However, even though the Ohio Supreme Court has held that the CSPA applies to debt *collectors*, Plaintiff has not demonstrated that the *collection* activity at issue qualifies as a "consumer transaction" under the CSPA.

In 2019, an Ohio appellate court held that a plaintiff must demonstrate that a particular debt arose from a consumer transaction in order for the attempted collection of that debt to be a "consumer transaction" within the meaning of the CSPA. *Harper v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 107439, 2019 WL 3494002, ¶¶ 25–38 (Ohio Ct. App. Aug. 1, 2019) (unpublished); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 260 (6th Cir. 2014) (holding, based on Ohio Supreme Court precedent, that the CSPA applies to debt collection activities relating to "a debt stemming from a consumer transaction" but not to debt collection activities relating to transactions exempted from the CSPA). The CSPA expressly excludes "transactions between persons [including banks] . . . and their customers" from its definition of "consumer transaction." Ohio Rev. Code § 1345.02(A).

10

The Complaint alleges that the subject debt arose when "Plaintiff's mother, Michelle, allegedly incurred an overdraft fee on a personal checking account (which she used for personal, not business, purposes) at Huntington National Bank." (Doc. 1 ¶¶ 8–10.) An overdraft fee is a fee charged by a bank to its customer. This type of transaction is expressly exempted from the CSPA. Plaintiffs do not plausibly allege how the collection of a debt arising from a transaction exempted from the CSPA qualifies as a "consumer transaction."

To support their assertion that "debt collection is a 'consumer' transaction" as defined in the CSPA (Doc. 1 ¶ 45), Plaintiffs rely on *Becker v. Montgomery, Lynch*, No. 1:02CV874, 2003 WL 23335929, at *2 (N.D. Ohio Feb. 26, 2003), where the district court held that "any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice." But subsequent decisions, including the Sixth Circuit's decision in *Slorp*—which was based on intervening Ohio Supreme court precedent, *see Slorp*, 587 F. App'x at 260 (citing *Anderson v. Barclay's Cap. Real Est., Inc.*, 989 N.E.2d 997, 1002 (Ohio 2013)—have rejected *Becker*'s overly broad equivalence between deceptive practices under the FDCPA and the Ohio CSPA.

In light of this precedent, the court declines to hold at the summary judgment stage that the subject debt arose from a consumer transaction covered by the Ohio CSPA. Because Plaintiff has not established that the CSPA applies to actions taken by Answering Defendants in connection with the subject debt, Plaintiff is not entitled to summary judgment on his CSPA claim.

IV.   **Ohio Common Law Claim – Invasion of Privacy**

The third count of the Complaint is a claim for common-law invasion of privacy. The Ohio Supreme Court has recognized four branches of the invasion-of-privacy tort, including "the

11

wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 431 N.E.2d 992, 993 (Ohio 1982) (quoting *Housh v. Peth*, 133 N.E.2d 340 (1956) and the Restatement (Second) of Torts § 652A). The "intrusion-upon-seclusion" branch of the invasion-of-privacy tort is based on the right to be left alone. *Lunsford v. Sterilite of Ohio, L.L.C.*, 165 N.E.3d 245, 253 (Ohio 2020). "Whether an invasion of privacy has occurred turns on the particular facts of the case. However, the right to privacy is not absolute." *Id.* (internal citations omitted).

In *Housh*, the Ohio Supreme Court held the following behavior to be an intrusion upon seclusion: "a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt." 133 N.E.2d at 344. The court observed that the plaintiff "was called out of the classroom in the public schools where she was employed three times within 15 minutes; that she lost a roomer at her rooming house because of the repeated calls, and was threatened with loss of employment unless the telephone calls ceased." *Id.* Although the court recognized that "a creditor has a right to take reasonable action to pursue his debtor and persuade payment," the court concluded that "[t]he calls to the employer, and the rooming house, were all part of the pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt." *Id.*

More recently,

> [w]hen considering whether a defendant's telephone calls to the plaintiff are offensive or outrageous enough to support an actionable claim of invasion of privacy, Ohio courts have looked to a number of different factors, including the number of calls, the content of the calls, the time of day that the calls were made, and whether the calls were accompanied by other contacts with the plaintiff.

*Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011). The Ohio Court of Appeals has suggested that whereas "'hundreds of phone calls' is sufficient for an actionable claim, . . . only two or three phone calls is not." *Id.* (quoting *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105, 1112, 1114 (Ohio Ct. App. 2002)). In *King v. Cashland, Inc.*, the Ohio Court of Appeals held that making forty to fifty calls to a debtor and invoking homophobic and racist language "exceeded the bounds of reasonableness." No. 18208, 2000 WL 1232768, at *3 (Ohio Ct. App. Sept. 1, 2000). Relying on Ohio law, the Sixth Circuit has distinguished between a creditor's calls to a debtor—where the creditor possesses "a right to take reasonable action to pursue his debtor and persuade payment," *Charvat*, 656 F.3d at 453 (quoting *Housh*, 133 N.E.2d at 40)—and calls from a party who lacks such a right. Where a caller lacks a right to take persuasive action, attempts at contact may be "offensive and violative of the individual's right of privacy" even if the content of the telephone call is "not objectionable." *Id.* (quoting *Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659, 666 (Ohio 2009)).

In this case, Defendants contacted Plaintiff about a debt belonging to a different individual. They threatened Plaintiff with criminal prosecution if he failed to provide them with information to assist in locating the alleged debtor. Although the Complaint does not identify a specific number of calls that Defendants allegedly made, the record indicates that Plaintiff received calls repeatedly. Even if Defendants had a right to take action to collect a debt from Plaintiff's mother, their repeated threatening calls to Plaintiff, who was not the debtor, exceeded the bounds of reasonableness. This conduct impaired Plaintiff's relationship with his mother and caused him stress. This is sufficient to establish Answering Defendants' liability for the tort of invasion of privacy.

V.      **Request for Default Judgment Against Defendant Martynkiewicz**

Plaintiff requests that the court enter a default judgment against Defendant Martynkiewicz, who is in default. (*See* Doc. 37.) Because the court cannot determine, based on the record currently before it, Defendant Martynkiewicz's individual damages liability for Plaintiff's claims, the court will wait to enter a default judgment against Defendant Martynkiewicz until it is able to enter a single judgment addressing all claims against all Defendants. *See* Fed. R. Civ. P. 54(b).

## Conclusion

Plaintiff's motion for summary judgment (Doc. 53) is GRANTED on the questions of Answering Defendants' liability for Plaintiff's claims under the FDCPA and Plaintiff's claim for common-law invasion of privacy. The motion is DENIED as to Defendant Martynkiewicz and on the question of Answering Defendants' liability under the Ohio CSPA.

Plaintiff's superseded motion for summary judgment (Doc. 51) is DENIED AS MOOT.

Dated this 23rd day of July, 2021.

Geoffrey W. Crawford, Judge
United States District Court