UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NICHOLAS NAZAROVECH,

        Plaintiff,

     v.                                      20-CV-250 (JLS)

AMERICAN ELITE RECOVERY, LLC,
MARK M. MILLER, SCOTT
SANTORIO, KAYLA D'ANGELO,
AMERICAN RECOVERY SYSTEMS,
LLC, and CRAIG MARTYNKIEWICZ,

        Defendants.

_____

## DECISION AND ORDER

Plaintiff Nicholas Nazarovech asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 *et seq.*, the Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code Ann. § 2923.31 *et seq.*—as well as an Ohio common law claim for invasion of privacy. *See* Dkt. 12. Defendants have not, however, satisfactorily participated in litigation, as they have failed to respond timely to Nazarovech's discovery requests or respond to court-ordered involvement.

For the reasons below, the Court enters a default judgment as to liability against the limited liability corporation defendants (American Elite Recovery, LLC and American Recovery Systems) for failure to retain counsel. The Court also strikes the answer of Defendants Miller, Santorio, and D'Angelo and enters default

judgment as to liability against them.[1]  The Court further GRANTS Nazarovech's request to dismiss his OCSPA claim without prejudice.  Finally, the Court will refer this matter to a magistrate judge to calculate damages on Nazarovech's FDCPA, OCPA, and invasion of privacy claims.

## BACKGROUND

### I.   NAZAROVECH'S COMPLAINT

Nazarovech commenced this action in 2018, asserting claims against Defendants American Elite Recovery, LLC ("American Elite"), Mark Miller, Scott Santorio, Kayla D'Angelo, Craig Martynkiewicz, and American Recovery Systems, LLC ("American Recovery") under the FDCPA, OCSPA, OCPA, and Ohio common law.

As alleged, Nazarovech's mother incurred an overdraft fee on a personal checking account she held at Huntington National Bank.  *See* Dkt. 54, at 6. Members of American Elite (a debt collection business owned by Defendant Miller) attempted to collect this incurred debt, without possessing any right to it.  *Id.* American Elite employees repeatedly called Nazarovech and threatened him "with

---

[1] Defendant Martynkiewicz has not filed an answer in this matter.  In October 2019, Nazarovech applied for a clerk's entry of default as to Martynkiewicz, Dkt. 36, which the Clerk of Court entered.  Dkt. 37.  Nazarovech later requested default judgment as to Martynkiewicz.  Dkt. 53, at 2.  The Court denied that request because it could not determine Martynkiewicz's individual liability as to damages. Dkt. 54, at 14.  The Court deferred entering default judgment as to Martynkiewicz until it was able to enter a "single judgment addressing all claims against all Defendants."  *Id.*  Because this Order resolves all of Nazarovech's claims against all Defendants, the Court now enters default judgment as to Martynkiewicz.

2

arrest, detention, and criminal prosecution if he did not reveal the whereabouts of his mother." *Id.* These employees did not initially identify themselves and ignored Nazarovech's requests to stop calling. *Id.* Nazarovech alleges that this conduct impaired his relationship with his mother. *Id.*

## II.   ENSUING LITIGATION

After Defendants failed to participate adequately in defending this matter, Nazarovech successfully moved for summary judgment on his FDCPA and invasion of privacy claims. *See* Dkt. 54. The Court denied summary judgment on Nazarovech's OCPA claim, due to a lack of evidence establishing the length of Defendants' purported scheme or that anyone besides Nicholas Nazarovech was a victim. *See* Dkt. 56, at 16. Nazarovech moved for a virtual bench trial. Dkt. 55, at 6–7. The trial commenced virtually on July 31, 2023 before Hon. Geoffrey Crawford to determine liability on Nazarovech's OCPA claim, as well as damages on all viable claims. After two witnesses testified, the trial was cancelled due to technical difficulties. *See* Dkt. 62. The matter was thereafter reassigned to the undersigned. *See* Dkt. 63.

Currently pending is Nazarovech's motion for summary judgment on his OCPA claim with additional supporting evidence. *See* Dkt. 59, at 4–6. Nazarovech also asks this Court to dismiss his OCSPA claim without prejudice. *See* Dkt. 66, at 1. Defendants have not responded to Nazarovech's pending summary judgment motion or his request to dismiss the OCSPA claim without prejudice, and the time to do so has passed. *See* Loc. R. Civ. P. 7(b)(2)(A).

3

## ANALYSIS

Default judgment is warranted as to all Defendants.  The reason for the default judgment against American Elite and American Recovery, however, differs that as to the remaining individual defendants (Miller, Santorio, D'Angelo, and Martynkiewicz).  A judgment of default may be entered against a defendant pursuant to Rule 37 or Rule 55.  *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444 (2d Cir. 2013).

## I.   RULE 55 DEFAULT JUDGMENT AGAINST AMERICAN ELITE RECOVERY, LLC AND AMERICAN RECOVERY SYSTEMS, LLC

Defendants American Elite and American Recovery—each a limited liability company—cannot represent themselves *pro se* in an action filed in federal court. Corporations, partnerships, and limited liability companies may not appear without counsel.  *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) ("a sole member limited liability company must be represented by counsel to appear in federal court."); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*.").

The Federal Rules of Civil Procedure authorize this Court to enter a default judgment against any party that fails to answer or otherwise defend against an action.  Fed. R. Civ. P. 55(a), (b)(2).  And a corporate defendant's continued failure to obtain counsel is a failure to "otherwise defend" under Rule 55(a) because corporate entities cannot proceed *pro se*.  *See Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967); *see also Grace v. Bank*

4

*Leumi Trust Co. of N.Y.*, 443 F.3d 180, 192 (2d Cir. 2006) ("[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55[.]") (internal citation omitted); *SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) (same).

This Court has instructed American Elite and American Recovery about their requirement to retain counsel—and that such failure would result in the entry of a default judgment. *See* Dkts. 52, 70, 71. American Elite and American Recovery have both failed to retain new counsel by this Court's deadlines and have failed to defend this action. This Court, therefore, enters default judgment against them.

## II. DEFAULT JUDGMENT AS TO MILLER, SANTORIO, AND D'ANGELO

In October 2020, the Court ordered Defendants American Elite, Miller, D'Angelo, and Santorio to participate in discovery and produce documents. *See* Dkt. 48. Nearly three years later, Nazarovech reported that Defendants were not in compliance with the Court's orders. *See* Dkts. 66, 68. As a result, this Court ordered Defendants to show cause—by November 9, 2023—as to why the Court should not enter default judgment against them, indicating that failure to timely respond will result in sanctions. *See* Dkt. 68. Defendants failed to timely submit any materials to show cause.

Rule 37(b) of the Federal Rules of Civil Procedure states that, in pertinent part, if a party "fails to obey an order to provide or permit discovery," the court may "strik[e] pleadings in whole or in part" and "render[] a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii) and 37(b)(2)(A)(viii). Imposing

sanctions under Rule 37 is "within the discretion of the district court and a decision to dismiss an action [or enter a default] for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

A court may enter a default judgment against a defendant as a discovery sanction. *See* Fed. R. Civ. P. 37.  Default judgment is properly entered only upon consideration of: (1) the willfulness of the non-compliant party; (2) the efficacy of less severe sanctions; (3) the duration of the non-compliance; and (4) whether the non-compliant party was properly warned of the consequence of non-compliance. *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (citation omitted).  The last condition is particularly important in the case of a *pro se* defendant.  As noted by the Second Circuit, "a district court abuses its discretion if it dismisses a case without first warning a *pro se* party of the consequences of failing to comply with its discovery orders." *Guggenheim*, 722 F.3d at 452.

"[D]ismissal or default" should be ordered "only when the district judge has considered lesser alternatives." *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).  No sanction should be imposed without giving the disobedient party notice of the particular sanction sought and an opportunity to be heard in opposition to its imposition. *See, e.g., Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 270 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119

6

(2000); *United States Freight Co. v. Penn Central Transportation Co.*, 716 F.2d 954, 955 (2d Cir. 1983).

Here, each factor weighs in favor of entering default judgment. First, the record shows repeated failure to abide by discovery obligations and court orders. *See, e.g.,* Dkt. 47-48. And the Court has granted the individual Defendants an opportunity to explain why default judgment should *not* be entered against them. *See* Dkt. 68. Consistent with their prior conduct in this case, however, the individual Defendants did not respond.

Second, because Defendants have largely failed to participate in this litigation or comply with this Court's orders, the Court concludes that a lesser sanction would be ineffective. Indeed, the purposes of Rule 37 sanctions are to ensure that a party will not benefit from its own failure to comply, to obtain compliance with a particular order issued, and to serve a general deterrent effect— provided that the party against whom they are imposed was in some sense at fault. *Szafrankowska v. AHRC Home Care Servs., Inc.*, No. 06 Civ. 1247 (SHS)(JCF), 2008 WL 186206, at *1 (S.D.N.Y. Jan. 22, 2008) (quoting *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1998)); *see also S. New England*, 624 F.3d at 149.

Third, the individual Defendants' noncompliance has spanned nearly *three years*—and Courts have concluded that durations of time brief as *a few months* weigh in favor of dispositive sanctions. *See, e.g., Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (three months); *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (four months). And where, like here, the period of

noncompliance exceeds six months, this factor weighs even more heavily toward such remedies. *See, e.g., Agiwal*, 555 F.3d at 303 (six months); *Phelan v. Campbell*, 507 Fed. Appx. 14, 16 (2d Cir. 2013) (seven months); *Ruzsa v. Rubenstein & Sendy Attorneys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (seven months); *Battiste-Downie v. Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (one year).

Lastly, Defendants have been warned of the consequence of non-compliance. *See World Wide*, 694 F.3d at 159 (quoting *Agiwal*, 555 F.3d at 302). Parties have "no absolute entitlement to be warned that they disobey court orders at their peril[.]" *Silva v. Cofresi*, No. 13 Civ. 3200 (CM)(JCF), 2014 WL 3809095, at *4 (S.D.N.Y. Aug. 1, 2014) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991)). This factor has been identified as the "[m]ost critical[]" of those listed in *Agiwal* and *World Wide*. *See, e.g., Ruiz*, 2014 WL 4635575, at *3 (citing *World Wide*, 694 F.3d at 160). Indeed, the Second Circuit "has repeatedly upheld dismissal as an appropriate sanction where the non-compliant parties were warned of the possibility." *Ruiz*, 2014 WL 4635575, at *3 (collecting cases).

Therefore, a default judgment is appropriate where a party "has engaged in 'sustained and willful intransigence in the face of . . . explicit warnings from the court.'" *Urbont v. Sony Music Entm't*, No. 11 Civ. 4516 (NRB), 2014 WL 6433347, at *4 (S.D.N.Y. Nov. 6, 2014) (quoting *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994)); *see also Obot v. Comm'r*, 254 Fed. Appx. 57, 58 (2d Cir. 2007) (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001) ("[I]t is

difficult to imagine how a dismissal [for failure to defend] following an unheeded warning could be an abuse of discretion.")).

Defendant Miller was previously warned for failure to comply with discovery. Dkt. 50. Defendants Miller, Santorio, and D'Angelo were again warned that this Court would enter sanctions against them if they failed to timely respond to this Court's order to show cause. *See* Dkt. 68.

For these reasons, pursuant to its authority under Rule 37(b)(2)(A)(iii) and 37(b)(2)(A)(vi), the Court will strike the Answer (Dkt. 24) and enter default judgment as to Miller, Santorio, and D'Angelo.[2]

## III.   MERITS OF NAZAROVECH'S CLAIMS

Having determined that Defendants' noncompliance warrants an entry of default judgment pursuant to Rules 37 and 55, this Court must "follow the procedure for entry of a default judgment as set forth in [Rule 55]." *See Kuruwa v. Meyers*, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011).

Under the "case law interpreting that rule, the default establishes Meyers' liability . . . as long as the complaint has stated a valid cause of action." *Id.* (citation omitted). *See also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("a district court need not agree that the alleged facts constitute a valid cause of action" and "prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's

---

[2] As discussed above, Defendant Martynkiewicz has not filed an answer in this matter, and the Court now enters a default judgment against him.

liability as a matter of law") (citation omitted).

As such, this Court must determine whether the unchallenged facts constitute a legitimate cause of action. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (court may rely on "detailed affidavits and documentary evidence," in addition to the complaint, to determine the sufficiency of a default judgment). Additionally, damages are not deemed admitted on account of a defendant's default. *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Olvera v. Los Taquitos Del Tio Inc.*, No. 15 Civ. 1262 (BMC), 2015 WL 3650238, at *1 (E.D.N.Y. 2015). Instead, a plaintiff seeking damages from a defaulting defendant must prove entitlement to damages to a "reasonable certainty." *Id.* at *1.

Reasonable certainty means that "damages may not be merely speculative, possible or imaginary, but . . . directly traceable to the breach, not remote or the result of other intervening causes." *Credit Lyonnais Sec. (USA) Inc. v. Alcantara*, 183 F.3d 151, 153 (2d Cir. 1999). While the party seeking damages is entitled to all reasonable inferences from the evidence it offers, a court must "ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded." *Avelar v. Quiros, Inc.*, No. 13-cv-7017 (ADS)(AYS), 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015). At the damages phase, courts have discretion to hold an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2). Such a hearing is not required, however, so long as documents submitted, such as detailed

affidavits, allow the court to conduct an inquiry sufficient to establish damages to a reasonable certainty. *See id.* at *7.

The Court, therefore, accepts as true the factual allegations in Nazarovech's complaint, as well as supporting affidavits and documentary evidence, except as to the damages claimed.

### A. Fair Debt Collection Practices Act Claims

Nazarovech alleges that Defendants violated Sections 1692b, 1692d, and 1692e of the FDCPA. *See* Dkt. 12. To state a claim under the FDCPA, "a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA." *Felberbaum v. Sequium Asset Sols.*, No. 21-CV-9513, 2023 WL 167559, at *3 (S.D.N.Y. Jan. 11, 2023).

Here, Nazarovech's mother was a "consumer" protected under the FDCPA and Nazarovech has standing under the FDCPA to bring suit for those violations. *See Sibersky v. Borah, Goldstein, Sltshculer & Schwartz, P.C.*, 155 F. App'x 10, 11 (2d Cir. 2005). Moreover, the debt was incurred from an overdraft fee on a personal checking account. *See* Dkt. 12, ¶ 20; *see also Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017) (credit card debt that was used primarily for family, personal, or household purposes constituted a consumer debt). And Defendants were "debt collectors" under the FDCPA. *See* Dkt. 12, ¶ 12.

1.  15 U.S.C. § 1692b

Section 1692b of the FDCPA requires a "debt collector communicating with

any person other than the consumer for the purpose of acquiring location

information about the consumer" to:

> (1) identify himself, state that he is confirming or correcting
>     location information concerning the consumer, and, only if
>     expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once
>     unless requested to do so by such person or unless the debt
>     collector reasonably believes that the earlier response of such
>     person is erroneous or incomplete and that such person now
>     has correct or complete location information . . . .

15 U.S.C. § 1692b.

Here, the record establishes that Defendants violated Section 1692b.

Specifically, Defendants refused to identify themselves when they contacted

Nazarovech by phone and called Nazarovech repeatedly even though he expressly

objected to receiving additional communications.  Dkt. 12, ¶ 25.

2.  15 U.S.C. § 1692d

Section 1692d prohibits debt collectors from engaging in "conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with

the collection of a debt."  15 U.S.C. § 1692d.  Examples of such conduct include

threatening violence, using obscene or profane language, publishing "a list of

consumers who allegedly refuse to pay debts," advertising a debt for sale as a means

of coercing payment of the debt, and "[c]ausing a telephone to ring or engaging any

person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.*

Here, the record demonstrates that Defendants conduct violated Section 1692d. Defendants caused Nazarovech's phone to ring continuously by repeatedly placing calls. *See* Dkt. 47, Exhs. 2–5. Defendants also threatened Nazarovech with arrest and criminal prosecution. *See id.* These actions were taken with the intent to abuse Nazarovech, highlighted by Defendants' statement that they would "continue to call [Nazarovech] every single day until he disclosed his mother's whereabouts." Dkt. 12, ¶ 30.

### 3. 15 U.S.C. § 1692e

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The statute identifies "[t]he threat to take any action that cannot legally be taken or is not intended to be taken" as an example of conduct prohibited under this section. 15 U.S.C. § 1692e(5). Threats of criminal prosecution and arrest constitute false and misleading statements. *See FTC v. Moses*, 913 F.3d 297, 302 (2d Cir. 2019).

Here, the record also supports Defendants' liability as to Section 1692e. Defendants threatened Nazarovech with "arrest, detention, and criminal prosecution" despite lacking the legal authority to do so. Dkt. 12, ¶ 32; Dkt. 53, at 16.

## B. Ohio Corrupt Practices Act Claim

Under the OCPA, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." Ohio Rev. Code Ann. § 2923.32(A)(1); *see also Universal Coach Inc. v. N.Y.C. Transit Auth., Inc.*, 629 N.E.2d 28, 32 (Ohio Ct. App. 1993) (defining elements as (1) two or more specifically prohibited state or federal offenses, (2) prohibited conduct constituting a pattern of corrupt activity, and (3) enterprise involvement).

An "enterprise" is any of a variety of types of businesses, or even a group of associated persons who are not a legal entity, and applies to "illicit as well as licit enterprises." Ohio Rev. Code Ann. § 2923.31(C). Here, the record establishes that American Elite is a debt collection business owned by Defendant Miller, and employs the other defendants in this case. *See* Dkt. 54, at 6. This is an "enterprise" within the meaning of the OPCA. *See Ohio v. Malone*, 61 N.E.3d 46, 58 (Ohio Ct. App. 2016) (finding that sole proprietorship roofing company was an "enterprise").

Next, turning to the required prohibited acts, "corrupt activity" under the OPCA "means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" any of the statutorily proscribed conduct. Ohio Rev. Code Ann. § 2923.31(I)(2)(a)–(5)(b). One of those areas of prohibited conduct is "[a] violation of section . . . 2905.11." *Id.* § 2923.31(I)(2)(a). Section 2905.11 prohibits extortion, stating "[n]o person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do

14

an unlawful act, shall [u]tter or threaten any calumny against any person; [or] [e]xpose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." *Id.* § 2905.11(A)(4)–(5).

Here, employees of American Elite called Nazarovech repeatedly and "threatened [him] with arrest, detention, and criminal prosecution if he did not reveal the whereabouts of his mother" and Defendants' conduct injured Nazarovech by impairing his relationship with his mother. *See* Dkt. 54, at 6. Nazarovech has established that Defendants engaged in "corrupt activity" under the OPCA.

Moreover, Ohio law also outlaws extortion based on violations of the Ohio menacing statutes, Ohio Rev. Code Ann. sections 2903.21 and 2903.22. Ohio Rev. Code Ann. § 2905.11(A)(3). The aggravated menacing statute provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will . . . cause mental distress to the other person or a family or household member of the other person." *Id.* § 2903.211(A)(1).

Nazarovech has established that Defendants engaged in that prohibited conduct as well. Defendants told Nazarovech they would call him every day until he disclosed his mother's whereabouts and threatened him with arrest, detention, and criminal prosecution.

For the final element, the OCPA defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated,

and are not so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code Ann. § 2923.31(E).  To be a "pattern," the acts must not emanate from a single event. *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 709–10 (Ohio Ct. App. 2009).  Instead, Ohio utilizes a multi-factor approach:

> [T]o state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of different predicate acts (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better).

*Id.* (quoting *Columbia Nat'l Resources., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995)). Where there is "only one purpose, one result, one set of participants, one victim, and one method of commission, there is no continuity and therefore no pattern." *Id.* at 710.

In his current effort to establish a "pattern of corrupt activity," Nazarovech submits witness statements and declarations that point to a "pattern" of Defendants' prohibited conduct. *See* Dkt. 59, Exh. 1–5.  Nazarovech highlights, among other things, Defendants' varying threats to several victims spanning over several months, including threats to pursue lawsuits, garnishment, legal fees, felony charges, and federal investigations.  Caitlyn Gill states that Defendants threatened her with lawsuits, garnishment, and legal fees.  *See* Dkt. 59, at 4, Exh. 1 (Gill Statement).  Bruce Jordan reports that Defendants threatened him with felony charges and federal investigation.  *See id.*, Exh. 2 (B. Jordan Decl.).  Jordan also

reports that Defendants called his workplace and impersonated a detective. *Id.* Defendants also threatened victim Kaneesha Smith with a warrant for her arrest. *See id.*, Exh. 3 (K. Smith Decl.). Another victim, Gregory Baize, states that he received multiple phone calls during which he was falsely threatened with lawsuits or arrest. *See id.*, Exh. 4 (G. Baize Decl.). While Nazarovech concedes that most of the victims' injuries were emotional, some also suffered reputational and monetary injuries. *Id.* at 5.

The record evidence, which Defendants have not countered, establishes that Defendants engaged in a "pattern of corrupt activity" as defined by Ohio law. Defendants' corrupt behavior affected at least five victims, not including Nazarovech. This corrupt behavior spanned several months, targeted several victims, and included threats to the victims on multiple occasions. The threats varied, and included criminal prosecution, federal investigation, arrest, civil lawsuits, and legal fees. *See* Dkt. 54, at 6.

The record establishes a sufficient basis to find Defendants' liable on Nazarovech's OCPA claim.

### C. Ohio Invasion of Privacy Claim

The Ohio Supreme Court has recognized four branches of the invasion-of-privacy tort, including "wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sustin v. Fee*, 431 N.E.2d 992, 993 (Ohio 1982) (quoting *Housh v. Peth*, 133 N.E.2d 340 (Ohio 1956), and Restatement (Second) of Torts §

652A)).  The "intrusion-upon-seclusion" branch of the invasion-of-privacy tort is based on the right to be left alone.  *Lunsford v. Sterilite of Ohio, LLC*, 165 N.E.3d 245, 253 (Ohio 2000).  "Whether an invasion of privacy has occurred turns on the particular facts of the case.  However, the right to privacy is not absolute." *Id.* (internal citations omitted).

In *Housh*, the Ohio Supreme Court held the following was an intrusion upon seclusion: "a systematic campaign of harassment of the plaintiff, not only in numerous telephone calls to the plaintiff herself every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt."  133 N.E.2d at 344.  The court observed that the plaintiff "was called out of the classroom in the public schools where she was employed three times within 15 minutes; that she lost a roomer at her rooming house because of the repeated calls, and was threatened with loss of employment unless the telephone calls ceased." *Id.*  Although the court recognized that "a creditor has a right to take reasonable action to pursue his debtor and persuade payment," the court concluded that "[t]he calls to the employer, and the rooming house, were all part of the pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt." *Id.*

More recently,

> [w]hen considering whether a defendant's telephone calls to the plaintiff are offensive or outrageous enough to support an actionable claim of invasion of privacy, Ohio courts have looked to a number of different factors, including the number of calls, the content of the calls,

18

the time of day that the calls were made, and whether the calls were accompanied by other contacts with the plaintiff.

*Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011). The Ohio Court of Appeals has suggested that, whereas "'hundreds of phone calls' is sufficient for an actionable claim, . . . only two or three phone calls is not." *Id.* (quoting *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105, 1112, 1114 (Ohio Ct. App. 2002)). In *King v. Cashland*, the Court of Appeals of Ohio held that making forty to fifty calls to a debtor and invoking homophobic and racist language "exceeded the bounds of reasonableness." No. 18208, 2000 WL 1232768, at *3 (Ohio Ct. App. Sept. 1, 2000).

Relying on Ohio law, the Sixth Circuit has distinguished between a creditor's calls to a debtor—where the creditor possesses "a right to take reasonable action to pursue his debtor and persuade payment," *Charvat*, 656 F.3d at 453 (quoting *Housh*, 133 N.E.2d at 340)—and calls from a party who lacks such a right. Where a caller lacks a right to take persuasive action, attempts at contact may be "offensive and violative of the individual's right of privacy," even if the content of the telephone call is "not objectionable." *Id.* (quoting *Motorists Mitt. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659, 666 (Ohio 2009)).

Here, Defendants contacted Nazarovech about a debt belonging to his mother. *See* Dkt. 47. Defendants threatened Nazarovech with criminal prosecution if he failed to provide them with information to assist in locating his mother. *Id.*, Exhs. 2–5; Dkt. 53, at 21–22. The record indicates that Nazarovech received calls repeatedly. *Id.* Even if Defendants had a right to take action to collect a debt from Nazarovech's mother, their repeated threatening calls to Nazarovech, who was not

19

the debtor, exceeded the bounds of reasonableness.  Moreover, these calls caused Nazarovech's relationship with his mother to suffer.  *See* Dkt. 53, at 21.

The record demonstrates that Defendants' conduct establishes liability for Nazarovech's invasion of privacy claim.

## IV.   DAMAGES

Based on these determinations, the Court will refer this matter to a magistrate judge to evaluate and recommend the appropriate amount in damages. While a "party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992). Although the default "establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-03101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted).

## CONCLUSION

For the above reasons, the Court:

- enters default judgment against <u>all Defendants;</u>

- GRANTS Nazarovech's request to dismiss his Ohio Consumer Sales Practices Act claim without prejudice (Dkt. 66, at 1); and

- DENIES Nazarovech's motion for summary judgment on his Ohio Corrupt Practices Act claim (Dkt. 59, at 4–6) as moot.

This case will be referred to a magistrate judge for a report and recommendation on damages.


SO ORDERED.


Dated:       July 19, 2024
             Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE